ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Wednesday, November 30, 2011 1:56:52 PM
CASE NUMBER: 2011 CV 08589 Docket ID: 16695420
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

IN THE MONTGOMERY COUNTY COURT OF COMMON PLEAS, OHIO
CIVIL DIVISION

**CINDY L. MAY**
411 Deed Avenue
Dayton, Ohio 45404

    Plaintiff,

Vs.

**ELAN, INC.,**
d/b/a ELAN FINANCIAL SERVICES
and d/b/a Elanco Financial Services
Commerce Court
4 Station Square, Suite 620
Pittsburgh, Pennsylvania 15219

And

TRANS UNION LLC
C/O The Prentice-Hall Corporation
System, Inc., S/A
50 West Broad Street, Suite 1800
Columbus, OH 43215

And

EXPERIAN INFORMATION
SOLUTIONS, INC.
C/O C T Corp, S/A
1300 E 9th St
Cleveland, OH 44114

And

EQUIFAX INFORMATION SERVICES LLC
C/O CSC-Lawyers Incorporating Service
(Corporation Service Company), S/A
50 West Broad Street, Suite 1800
Columbus, OH 43215

    Defendants.

Case No. _____

Judge _____

## COMPLAINT WITH JURY DEMAND ENDORSED HEREON

Now comes Plaintiff, Cindy L. May ("May"), by and through her counsel, and for her Complaint, states and avers as follows:

### PARTIES & FACTS

1. This case involves an action for damages advanced by an individual consumer, Cindy L. May, against Defendants, for violations of the Fair Credit Reporting Act, and other state laws.

2. At all times relevant herein, Plaintiff, May, is and has been an individual, and a resident of Montgomery County, Ohio.

3. At all times relevant herein, Defendant, Elan, Inc., d/b/a Financial Services, and also d/b/a Elanco Financial Services (collectively "Elan") is a foreign corporation which conducts business in the State of Ohio.

4. Elan does not have a current statutory agent registered with the Ohio Secretary of State, therefore service of process is being at Elan's principle place of business in Pittsburgh, Pennsylvania.

5. At all times relevant herein, Defendant, Trans Union LLC ("TU"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

6. At all times relevant herein, Defendant, Experian Information Solutions, Inc. ("Experian"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

7. At all times relevant herein, Defendant, Equifax Information Services LLC ("Equifax"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and will be served through its authorized agent for service of process.

8. Defendants have reported derogatory and inaccurate statements and information relating to May and her credit history to third-parties.

9. The inaccurate statements and information include, *inter alia*, accounts with, and tradeline information furnished by Elan.

10. Said Elan credit account and/or tradeline appears as:

    a. "ELANCO FINL SVC" on May's TU consumer credit report as a revolving individual account, indicating it has been "Charged Off as Bad Debt."[1]

    b. "ELAN FINANCIAL SERVICES" on May's Experian consumer credit report as a revolving individual account, indicating "120 days past due" status as of June 2010.

    c. "ELAN FINANCIAL SERVICES" on May's Equifax consumer credit report as a revolving individual account, indicating "CHARGE-OFF" status as of September 2010.

11. The inaccurate information reflects negatively upon May, May's credit repayment history, May's credit worthiness, and May's financial responsibility as a borrower.

12. The defendants have been reporting the false and derogatory information through the issuance of inaccurate consumer credit reports that they have disseminated to various credit grantors and/or other persons and/or entities.

---

[1] The last four digits of the account number have been redacted from the consumer credit reports provided to May by the respective credit reporting agencies. For purposes of security of financial information, the account number has been omitted from this pleading.

13. As a direct and proximate result of the defendants' actions and/or omissions described herein, May has been unable to obtain credit and/or favorable interest rates, and is now chilled to applying for credit as a proximate result of the false and derogatory information being reported about her.

14. May has been subjected to debt collection attempts as a result of the Elan account being assigned to a debt collector and/or sold to a debt buyer.

15. With respect to all disputes referenced in this Complaint, *supra* and *infra*, as applicable to each and every defendant herein, as part of her letters of dispute therewith, May informed each and every defendant herein that the Elan account and/or tradeline on her consumer credit disclosures and/or consumer credit reports was not attributable to her.

16. Upon information and belief, the alleged credit account associated with the Elan account entry and/or tradeline belonged to Evelyn I. Anderson, the deceased mother of May.

17. After Evelyn I. Anderson's death, May became aware of the Elan credit account, and the adverse reporting associated with the Elan credit account being falsely attributed to her.

18. The ongoing derogatory treatment by the defendants and their agents and representatives regarding this account has subjected May to additional emotional devastation as it adversely pertains to her late beloved mother.

19. With respect to all disputes referenced in this Complaint, *supra* and *infra*, as applicable to each and every defendant herein, May was compliant, prompt and responsive to all requests for information and documentation from each and every defendant.

20. At all times relevant, May has taken steps to mitigate her damages by disputing the inaccurate information with each credit reporting agency named as a defendant herein; specifically, TU, Experian and Equifax.

21. At all times relevant, May has taken steps to mitigate her damages by disputing the inaccurate information with Elan.

22. Since on or before February 2011 and the present time, the Elan account entry and/or tradeline has appeared on May's TU consumer credit report under derogatory status.

23. On or about March 4, 2011, May submitted a written dispute to TU, and explained that the alleged Elan account appearing on her consumer credit report with TU did not, and does not, belong to her. May also disputed the Personal Information attributed to May, which included erroneous addresses.

24. Said written dispute to TU dated March 4, 2011 included numerous enclosures, including *inter alia*:

   a. a copy of May's TU credit report with the disputed tradelines noted;
   b. copies of correspondence to Cardmember Services, which set forth May's disputes;
   c. and proof of identification.

25. The Elan account entry and/or tradeline furnished by Elan appearing on May's TU consumer credit report arose from debt and/or credit that did not, and does not, belong to May. Said account entries and/or tradelines were improperly attributed to May by TU, and as a result of willful or negligent actions and/or omissions of Elan and TU.

26. Since on or before July 2010 and the present time, the Elan account entry and/or tradeline has appeared on May's Experian consumer credit report under derogatory status.

27. On or about August, 2010, May submitted an on-line dispute to Experian, and explained that the alleged Elan account appearing on her consumer credit report with Experian did not, and does not, belong to her.

28. On or about March 4, 2011, May submitted a written dispute to Experian, and explained that the alleged Elan account appearing on her consumer credit report with Experian did not, and does not, belong to her. May also disputed the Personal Information attributed to May, which included erroneous addresses.

29. Said written dispute to Experian dated March 4, 2011 included numerous enclosures, including *inter alia*:

   d. a copy of May's Experian credit report with the disputed tradelines noted;
   e. copies of correspondence to Cardmember Services, which set forth May's disputes;
   f. and proof of identification.

30. The Elan account entry and/or tradeline furnished by Elan appearing on May's Experian consumer credit report arose from debt and/or credit that did not, and does not, belong to May. Said account entries and/or tradelines were improperly attributed to May by Experian, and as a result of willful or negligent actions and/or omissions of Elan and Experian.

31. Since on or before February 2011 and the present time, the Elan account entry and/or tradeline has appeared on May's Equifax consumer credit report under derogatory status.

32. On or about March 4, 2011, May submitted a written dispute to Equifax, and explained that the alleged Elan account appearing on her consumer credit report with Equifax did not, and does not, belong to her. May also disputed the Personal Information attributed to May, which included erroneous addresses.

33. Said written dispute to Equifax dated March 4, 2011 included numerous enclosures, including *inter alia*:

   g. a copy of May's Equifax credit report with the disputed tradelines noted;
   h. copies of correspondence to Cardmember Services, which set forth May's disputes;
   i. and proof of identification.

34. The Elan account entry and/or tradeline furnished by Elan appearing on May's Equifax consumer credit report arose from debt and/or credit that did not, and does not, belong to May. Said account entries and/or tradelines were improperly attributed to May by Equifax, and as a result of willful or negligent actions and/or omissions of Elan and Equifax.

35. As a result of May's disputes with TU, Experian and Equifax, upon information and belief, each respective credit reporting agency promptly notified Elan of May's disputes, as alleged *supra*, in accordance with U.S.C. § 1681(a)(2).

36. Between on or before summer 2010 through the present time, May has spent many hours making telephone calls and writing letters to Experian, TU, Equifax. In her correspondence and communications, May has requested a copy of her consumer credit report from Experian, TU and Equifax, and has denied that the Elan account entries described *supra* were attributable to her, and has demanded reinvestigation, and has also demanded that Experian, TU and Equifax delete the erroneous and derogatory data

on her consumer credit report. During that period of time, May has had multiple contacts with Experian, TU and Equifax in order to continually dispute the false data on her consumer credit report.

37. Between January 2010 and the date that her lawsuit is being filed, May spent many hours making telephone calls and writing letters to Elan and Elan's agents and representatives, demanding that Elan correct any false reporting which appeared on May's consumer credit reports as a result of Elan's erroneous furnishing of false and derogatory information, as set forth *supra*, and to deny that the Elan account and/or debt belonged to May.

38. Between Spring 2010 and the date that her lawsuit is being filed, May spent many hours dealing with debt collectors and/or debt buyers dunning her for payment on the alleged Elan account as a result of Elan retaining said debt collection services and/or selling the alleged debt. Each time, May has denied that the Elan account and/or debt belonged to her and demand they cease the wrongful collection activity against her.

39. On or about March 17, 2011, in response to May's dispute correspondence dated March 4, 2011 that TU received from May as set forth *supra*, TU sent correspondence to May indicating investigation results pertaining to the false and derogatory data regarding the Elan account entry and/or tradeline. These results indicated that the derogatory information had been "Verified, No Change." TU's correspondence indicated that the account entry and/or tradeline would remain on May's consumer credit report until April 2017.

40. TU's March 17, 2011 correspondence did reflect that the inaccurate Personal Information appearing on May's consumer credit report had been deleted.

41. The Elan account entry on May's TU report appears as "CHARGED OFF AS BAD DEBT."

42. On or about September 26, 2010, in response to May's online dispute correspondence of August 2010 that Experian received from May as set forth *supra*, Experian sent correspondence to May indicating investigation results pertaining to the false and derogatory data regarding the Elan account entry and/or tradeline. These results indicated that the derogatory information had been "Reviewed."

43. On or about October 20, 2010, in response to May's online dispute correspondence of August 2010 that Experian received from May as set forth *supra*, Experian sent correspondence to May indicating investigation results pertaining to the false and derogatory data regarding the Elan account entry and/or tradeline. These results indicated that the derogatory information "Remained."

44. The Elan account entry on May's Experian report appears as a "120 days past due as of Jun 2010."

45. Upon information and belief, Experian will continue to report the derogatory Elan account entry and/or tradeline until February 2017.

46. On or about March 31, 2011, in response to the March 4, 2011 dispute correspondence that Experian received from May, as described *supra*, wherein May disputed the Elan account entry and/or tradeline, Experian sent correspondence to May indicating investigation results pertaining to the false and derogatory data regarding the Elan account entry and/or tradeline. These results indicated that the derogatory information "Remains."

47. Experian's March 31, 2011 correspondence did reflect that the inaccurate information regarding May's residence history appearing on May's consumer credit report had been deleted.

48. Equifax received May's consumer dispute at 10:54 a.m. on March 10, 2011.

49. Equifax failed to respond to May's March 4, 2011 dispute.

50. On or about October 4, 2011 May pulled obtained a copy of her Equifax consumer credit report and discovered that the false and derogatory data regarding the Elan account entry was still reporting. The Equifax account entry and/or tradeline indicated that the account was "120+ DAYS PAST DUE" and the Payment History reflects a charge off on January 2010.

51. The erroneous Address Information appearing in the Personal Information section of May's Equifax consumer credit report continues to report inaccurately.

52. Upon information and belief, Equifax will continue to report the derogatory Elan tradeline until on or after 2017.

53. As a result of the false derogatory information on May's consumer credit report, she has suffered a loss of access to credit. This has caused May to suffer loss of credit capacity, sleeplessness, anxiety, serious embarrassment, humiliation and emotional distress.

### FIRST CAUSE OF ACTION: FAIR CREDIT REPORTING ACT

54. May hereby incorporates all other paragraphs as if fully restated herein.

55. This claim is for violation of the Fair Credit Reporting Act by Defendants, Experian, TU and Equifax, along with other common law claims.

56. Experian, TU and Equifax are each a "consumer reporting agency" as defined in the Fair Credit Reporting Act.

57. Experian, TU and Equifax each issued, assembled, transferred, and published "consumer reports," regarding May, as defined in the Fair Credit Reporting Act.

58. Experian, TU and Equifax have each continually added, stored, maintained, and disseminated personal and credit data about May which is false, erroneous, and misleading, without employing procedures to insure the maximum possible accuracy of the information posed to May's consumer reports and disseminated the same to third-parties.

59. Experian, TU and Equifax have each, through each Defendant's actions and inactions as described herein, caused great and irreparable injury to May.

60. Experian, TU and Equifax have each continually mis-merged, or otherwise misreported, credit data attributable to other persons with the consumer credit report of May.

61. Experian, TU and Equifax have each failed to utilize a search algorithm that is capable of distinguishing between persons with different personal identifiers.

62. Experian, TU and Equifax have each continually posted false and harmful information to May's consumer credit reports without requiring a reasonable number of points of correspondence.

63. Experian, TU and Equifax have each failed to invoke necessary functions, procedures, or programs designed to insure that false data and/or data attributable to other persons would not post on May's consumer credit report, and would be suppressed from appearing on May's consumer credit report.

64. Experian, TU and Equifax have each created, maintained, and utilized a credit reporting system that is defective, and does not comply with the Fair Credit Reporting Act, or other laws governing Experian, TU and Equifax's respective actions.

65. Experian, TU and Equifax have each improperly posted accounts and other data to May's credit files.

66. Experian, TU and Equifax have each acted with actual malice and/or with willful intent to injure May.

67. Experian, TU and Equifax have each defamed May by publishing false information regarding May's creditworthiness to third parties.

68. Experian, TU and Equifax have each invaded May's reasonable expectation of privacy.

69. Experian, TU and Equifax have each failed in their respective duty to prevent foreseeable injury to May.

70. Experian, TU and Equifax have each, through its actions and inactions, as described herein, caused great and irreparable harm to May, *inter alia*, as described herein.

### SECOND CAUSE OF ACTION: CONSUMER SALES PRACTICES ACT

71. May hereby incorporates all other paragraphs as if fully restated herein.

72. This claim is for violation of the Consumer Sales Practices Act by Defendants, Experian, TU and Equifax.

73. At all times relevant, May was a consumer, as defined by the Ohio Consumer Sales Practices Act.

74. At all times relevant, Experian, TU and Equifax were each a supplier, as defined by the Ohio Consumer Sales Practices Act.

75. At all times relevant, the facts as set forth herein, effect a consumer transaction, as defined by the Ohio Consumer Sales Practices Act.

76. At all times relevant, each defendant's actions and/or omissions, as forth herein, affected May's access to favorable credit terms, and that was unfair and/or deceptive to May.

77. At all times relevant, each defendant's violations of the Fair Credit Reporting Act, as set forth herein, was unfair and/or deceptive to May.

78. At all times relevant, each defendant's violations of common law claims, as set forth in Claim One above, and *infra*, was unfair and/or deceptive to May.

79. Experian, TU and Equifax each knew, or should have known, that its actions and/or omissions, as set forth herein, were unfair and/or deceptive to May, but Experian, TU and Equifax did so anyway, and that was unfair and/or deceptive to May.

80. As a result of the above, among other things, before, during, or after one or more consumer transactions involving or effecting May, Experian, TU and Equifax each committed one or more unfair and/or deceptive acts.

## THIRD CAUSE OF ACTION: FAIR CREDIT REPORTING ACT

81. May hereby incorporates all other paragraphs as if fully restated herein.

82. This claim is for violation of the Fair Credit Reporting Act by Defendant, Elan, along with other common law claims for defamation and invasion of privacy.

83. Elan willfully and/or negligently violated the provisions of the Fair Credit Reporting Act by willfully and/or negligently failing to comport with the Fair Credit Reporting Act § 1681s-2(b).

84. Elan defamed May by publishing false information regarding May's creditworthiness to third parties.

85. Elan invaded May's reasonable expectation of privacy.

86. Elan failed in its duty to prevent foreseeable injury to May.

87. Elan, through its actions and inactions, as described herein, cause great harm to May.

**WHEREFORE**, Plaintiff, May, demands judgment against Defendants, jointly and severally, as applicable in accordance with the allegations set forth above, as deemed just and lawful by the Court; plus, on each claim, litigation costs, interest, reasonable attorney fees, and any and all other legal and equitable relief this Honorable Court deems just and lawful and as follows:

## PRAYER FOR RELIEF

1. On the first claim for violation of the Fair Credit Reporting Act by TU, Experian, and Equifax, jointly and severally, compensatory damages in an amount greater than $25,000.00 to compensate May for her personal damages, the greater of May's actual or statutory damages, punitive damages, in an amount greater than $25,000.00, litigation costs, interest, attorney fees as deemed proper and lawful by the Court, and any and all other legal and equitable relief this Court deems just and lawful for each violation that may be proven at trial; and

2. On the second claim, for violation of the Consumer Sales Practices Act by TU, Experian and Equifax, jointly and severally, $200.00 statutory damages, or three times actual damages, whichever is greater, and other damages, remedies, and relief, including non-economic damages, litigation expenses, interest, and attorney fees as deemed proper and lawful by the Court, for each and every violation that may be proven at trial; and

3. On the third claim, for violation of the Fair Credit Reporting Act by Elan, compensatory damages in an amount greater than $25,000.00 to compensate

May for her personal damages, the greater of May's actual or statutory damages, punitive damages, in an amount greater than $25,000.00, litigation costs, interest, attorney fees as deemed proper and lawful by the Court, and any and all other legal and equitable relief that this Court deems just and lawful for each violation that may be proven at trial; and

Plus, on each and every claim, expenses of suit and litigation, interest, reasonable attorney fees; plus all costs, and any and all other legal and equitable relief deemed necessary and just.

### JURY DEMAND

Pursuant to Rule 38(b) of the Rules of Civil Procedure, a trial by jury composed of the maximum number of jurors permitted by law is hereby demanded by the Plaintiff Cindy L. May.

Respectfully submitted,

s/ Amy L. Wells
Amy L. Wells         (0078247)
Attorney for Plaintiff
WELLS LAW OFFICE, INC.
7925 Paragon Road, Suite 101
Dayton, Ohio 45459
Tel: (937) 435-4000
Fax: (937) 435-1510
AWells@OhioConsumerHelp.com
www.OhioConsumerHelp.com